JOHN WHITEHEAD et al.

*v.*

THE COMMERCIAL BUILDING AND LOAN ASSOCIATION.

[Filed January 26th, 1903.]

</div>

1. Where a building association becomes insolvent before maturity of the stock of a borrower, who has given it a mortgage conditioned for payment of the principal by the accumulation of funds of the association making the stock equal to the mortgage, the mortgagor is not entitled to credit on the mortgage for all premiums and dues paid by her, the assets not being sufficient to allow each stockholder and mortgagor to be thus treated.

2. One whose mortgage is held by an insolvent building and loan association is entitled to credit thereon for interest she has paid it, to be paid to the holder of a prior mortgage, and which it has not so paid, where allowance of such credit will not produce any inequality in the final distribution of its assets.

On petition for instructions.

*Mr. Frederick F. Guild,* receiver, *pro se.*

*Mr. John S. McMaster, contra.*

PITNEY, V. C. (orally).

Petition is filed by the receiver of the Commercial Building and Loan Association, the insolvent corporation, for instructions as to what credits are to be allowed to a mortgagor of the association, who applies to the receiver to pay off a mortgage held by the association.

The mortgagor is a stockholder in the association for twenty shares of stock, and is also a borrower. The class of shares of stock of which he is a stockholder have not matured, and were subscribed for in order to qualify the holder to become a borrower; and the mortgage, in the usual form, is conditioned for the payment of the principal by the accumulation of the funds of the association to such a point as to make the stock equal to the mortgage itself.

At the time the mortgage to the association was made there was already a mortgage on the premises for $2,500, held by a third party, and the additional sum of $1,500 was advanced in full by the association, and a mortgage was given for $4,000 to secure both sums—that is, the amount due on the first mortgage and the amount actually advanced by the association. On that $4,000 the interest has been paid monthly, amounting to $20; in addition, fifty cents a month on twenty shares of stock, amounting to $10 per month; and besides this there was paid a premium, or, in common language, a shave, of $16 a month from the time the loan was made.

The association became insolvent long before the time when, according to the theory of the enterprise, the stock would have been worth enough to pay the mortgage. The value of the shares of stock held by the mortgagor depends upon the amount of accumulated assets due to the payment of the monthly dues on the

shares of stock, and the monthly premiums, over and above the interest; from which accumulation must be deducted the expenses of managing the association and the losses due to bad loans.

The mortgagor, in ascertaining the amount due on her mortgage, claims a credit for the whole amount of premiums and dues which she has paid. In answer to this demand the receiver states that the assets are not sufficient to enable him to deal with each mortgagor and stockholder on that basis; that the result of so doing would be to work inequality among the stockholders. In other words, the result would be an unequal division of the assets among the stockholders.

In support of her claim the mortgagor refers to the case of *Weir* v. *Granite State Provident Association, 11 Dick. Ch. Rep. 234,* decided by Vice-Chancellor Reed. That case is apparently precisely in point, except that there the bonus, or shave, was deducted at the time the loan was made, instead of being paid monthly, as in this case. But nevertheless I am of the opinion that the point here raised was apparently not involved in the *Weir Case.* It certainly was not considered by the vice-chancellor. He does not consider the case of a deficiency of assets to enable the receiver to treat all the mortgagors and stockholders in the way there adopted. For that reason I think that I am not bound to follow that case in the present instance. The true rule to be applied in a case like this, as I think, is to allow the mortgage to be redeemed only upon paying the whole amount of principal and the few dollars of interest that may be in arrears, reserving to the mortgagor and stockholder the right to share in the surplus assets of the association, when they shall be finally ascertained, upon equitable principles.

One other small matter is submitted. It appears by a statement of the receiver that the association never became the owner of the first mortgage, but, as the interest was paid by the mortgagor, the association paid the same to the holder of the first mortgage; that that payment of interest stops at the last semi-annual payment due on the first mortgage, which was in June last, and that the monthly payments of interest to the association

have continued up to about the time the association failed, so that the association has actually received from the mortgagor interest properly applicable to the first mortgage, which it has not paid over; and the receiver asks for instructions as to whether he should pay these few dollars of interest on the first mortgage out of the funds of the association, or, in other words, allow the mortgagor that much. He says the doing of that will not, in his judgment, produce any inequality in the final distribution of the assets of the association.

I therefore authorize him to include in his credits to the mortgagor the amount of interest which she has paid over and above what the association has paid on the first mortgage.